Filed 12/16/14  P. v. Moore CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARDELL MOORE, JR.,<br><br>    Defendant and Appellant. | F067351<br><br>(Fresno Super. Ct.<br>No. 13CRAD681347)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Armando O. Rodriguez, Judge.[†]

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

---

[*] Before Gomes, Acting P.J., Poochigian, J. and Franson, J.

[†] Retired Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

-ooOoo-

## INTRODUCTION

Appellant/defendant Ardell Moore, Jr. appeals from an order requiring him to submit to involuntary administration of psychotropic medication. On appeal, his appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) In addition, appellant has requested this court review certain issues. After conducting such a review, we affirm.

## FACTS

As of 2013, appellant was 55 years old. He was committed to Coalinga State Hospital as a sexually violent predator (SVP) in 2006 and has remained committed since that time.[1]

On March 21, 2013, petitioner Department of State Hospitals (DSH) filed a petition in the Superior Court of Fresno County for an order to compel involuntary treatment with psychotropic medication on appellant, pursuant to *In re Calhoun* (2004) 121 Cal.App.4th 1315 (*Calhoun*).

On May 16, 2013, the superior court conducted a hearing on the petition. Dr. Emmanuel Fantone, a board certified psychiatrist, was the only witness at the hearing. He had been appellant's treating psychiatrist since December 2012 and testified extensively about defendant's criminal record and mental health history.

---

[1] In *Moore v. Superior Court* (2010) 50 Cal.4th 802, appellant challenged the SVP finding, and claimed his mental illnesses left him incompetent to participate in the SVP hearing. (*Id*. at pp. 812–814.) The Supreme Court rejected this argument and held "due process does not require mental competence on the part of someone undergoing a commitment or recommitment trial under the SVPA. [Citation.]" (*Id*. at p. 829.)

2.

*Hearing evidence*

Dr. Fantone testified that in 1978, appellant kidnapped and orally copulated a 16-year-old female. In 1984, appellant kidnapped and assaulted a 26-year-old female.

Dr. Fantone testified appellant's main diagnosis was schizophrenia, paranoid chronic type. Appellant had been repeatedly diagnosed with schizophrenia beginning in 1984, when he was confined at Camarillo State Hospital. Dr. Fantone believed appellant had schizophrenia since 1980. He had been medicated at various times since then. He was committed to Coalinga State Hospital as a sexually violent predator.

Appellant's medication controlled most of his symptoms, and he experienced occasional auditory hallucinations while on medication. In the past, however, he had poor impulse control as a result of his delusionary thinking, which caused him to become aggressive and violent. Appellant frequently accused the staff of mistreating or plotting against him.

Dr. Fantone offered examples of appellant's delusions, which had the "regular theme" of being persecuted or claiming to be another person. On January 26, 2007, appellant was observed talking to himself, mumbling incoherently, and responding to himself. Appellant told a peer " 'that f***ing piece of shit keeps coming to my room. He thinks he runs this unit. He has all the little people come to my room to bother me and take my things. I see his blue eyes staring at me, I kick his ass.' " In April 2008, appellant claimed he was an FBI agent, and he accused "a beam of light of watching him."

In March 2009, appellant threatened a staff member and claimed that person was stealing from him, and said: " '[M]y shit is gone off the table, and I asked that mother f***er where my shit was, he said he didn't know. I shot someone, my mother, my very own sister wouldn't tell me. You mother f***ers are all too busy protecting all these mother f***ers in here.' "

3.

Dr. Fantone testified appellant was initially placed on a *Calhoun* involuntary medication order as a result of an incident that occurred on January 27, 2011. At that time, appellant was not taking any medication, and he was in an acute psychotic and angry state. He flashed his genitals at a peer and tried to make a sexual connection. The peer refused and spat on him. Appellant attacked the peer with a pair of scissors. The staff promptly intervened and prevented any injuries. When he was later asked about the incident, appellant dismissed it and said he did not remember much of what happened.

On February 25, 2013, appellant asked a female nurse to come into his room. He showed the nurse a picture of a male with an erect penis and said, "I hope you don't feel offended." Appellant was alone with the nurse, but he did not touch or threaten her. This incident was deemed an act of aggression because it was uninvited and inappropriate.

There was a lapse in the previous involuntary medication order from February 27 to May 5, 2012, because of technical issues with the court order. When appellant learned the order had lapsed, he refused to take any medication. Dr. Fantone conceded that during that time, appellant's records reflected he was reasonably stable and there was no indication that his delusions or symptoms became worse. The absence of symptoms, however, was not inconsistent with the continued presence of mental illness. Dr. Fantone testified that even without medication, people with schizophrenia may sometimes appear stable for a period of time, but they can never be sure when the illness will reappear. Dr. Fantone testified schizophrenia was an incurable illness, it will return about 80 to 90 percent of the time, and the subject will always be a danger without appropriate medication. He had never personally treated anyone who went into and stayed in remission. Defendant had not committed a violent act since 2011 because he had been medicated except for the brief lapse of the involuntary order. Dr. Fantone did not believe appellant had gone into remission because he continued to experience auditory hallucinations.

Dr. Fantone testified appellant was not aware of his situation, he did not believe he had a mental illness, and he refused to participate in treatment. Dr. Fantone believed appellant was not able to properly evaluate the risks and benefits of psychotropic medication. When Dr. Fantone asked appellant about the effects of medication on him, appellant was dismissive and said it didn't make a difference whether or not he was taking medication because he was the same person. Appellant said he did not need to take medication and it just made him sleepy.

Dr. Fantone testified that based on appellant's history, there was a very high risk he would be a danger to others without psychotropic medication. He needed an involuntary medication order because otherwise he would refuse to take anything, as in the past when the order temporarily lapsed.

### ***The court's ruling***

At the conclusion of Dr. Fantone's testimony, the court asked appellant's attorney if appellant wished to testify or make a statement. Counsel consulted with appellant and said no. Appellant's counsel argued the court should deny the petition because there was no evidence that appellant had exhibited any dangerousness during the period when the involuntary medication order lapsed.

The court agreed there was no evidence of recent dangerousness, but granted the petition based on Dr. Fantone's testimony about appellant's behavioral history and the possibility that his condition could reoccur. The court concluded that appellant lacked capacity to refuse treatment based on his refusal to admit he had a mental health problem. The court ordered appellant to be involuntarily medicated with anti-psychotics for up to one year.

## DISCUSSION

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on September 10, 2013, we

5.

invited defendant to submit additional briefing.**2**  In response, defendant sent correspondence to this court and asserted the superior court and the hospital lacked jurisdiction to issue an involuntary medication order, the court failed to look into "the information" and other records about his case before it rendered a decision, more than one doctor should have testified in support of the order, and his constitutional right to be heard in court was violated at the hearing.

We briefly review the procedure to impose an involuntary medication order.  A competent adult has a common law and constitutional right to refuse medical treatment, including the administration of antipsychotic drugs.  (*In re Qawi* (2004) 32 Cal.4th 1, 14.)  An involuntarily committed patient may be forcibly treated with antipsychotic medication if a court has determined that he is not competent to refuse treatment.  (*Ibid.; In re Calhoun, supra,* 121 Cal.App.4th at p. 1354.)  The superior court shall determine competence to refuse treatment by clear and convincing evidence, "so clear as to leave no substantial doubt, [and] sufficiently strong to command the unhesitating assent of every reasonable mind.  [Citation.]"  (*Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, 733, fn. 14.)

A judicial determination of competency to refuse treatment involves consideration of three factors:  (1) whether the patient is aware of his situation and acknowledges his condition; (2) whether he understands the benefits and risks of treatment as well as alternatives to treatment; and (3) whether he is able to understand and evaluate the

---

**2** As acknowledged by appellate counsel, *Wende* review is only available in a first appeal of rights from a criminal conviction.  (*In re Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 543–544; *People v. Serrano* (2012) 211 Cal.App.4th 496, 501; *People v. Taylor* (2008) 160 Cal.App.4th 304, 312.)  Appellant is not entitled to *Wende* review since his appeal is from an order requiring involuntary medication.  However, we will proceed with this appeal consistent with the standards set forth in *Ben C.* and *Serrano*. (*In re Conservatorship of Ben C., supra*, 40 Cal.4th at pp. 543–544; *People v. Serrano, supra*, 211 Cal.App.4th at pp. 503–504.)

information regarding informed consent and participate in the treatment decision by rational thought processes. (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322–1323.)

There is overwhelming evidence in support of the superior court's order. Dr. Fantone testified without contradiction about appellant's mental health history, his repeated refusal to acknowledge his condition or accept treatment, his refusal to take medication and, more importantly, his behavior when he was not receiving the appropriate medication. While he was stable during a brief period when the prior order lapsed, Dr. Fantone testified that appellant had not gone into remission and continued to experience auditory hallucinations.

In addition, appellant was not denied his right to be heard. He was represented by counsel, who vigorously argued the involuntary order should not be granted. The superior court asked appellant and his attorney if he wished to address the court, counsel consulted with appellant, and he declined.

The superior court had jurisdiction to issue the order in this case, and that order is supported by the evidence presented at the hearing that appellant was unable to understand the benefits and risks of medication and was unable to evaluate the proposed treatment.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.

7.